UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
YANIRA L.S.,

                      Plaintiff,        <u>DECISION AND ORDER</u>
                                               1:23-CV-00028-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In March of 2018, Plaintiff Yanira L.S.[1] applied for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by The Legal Aid Society, Violeta Arciniega, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 16).

This case was referred to the undersigned on August 16, 2023. Presently pending are the parties' Motions for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 19, 22). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's motion is due to be denied, and this case is remanded for further administrative proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on March 6, 2018, alleging disability beginning October 2, 2017. (T at 428-40).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on October 13, 2020, before ALJ Alexander Levine. (T at 50-59).[3] Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 54-58).

### B.    ALJ's Decision

On July 29, 2021, ALJ Levine issued a decision denying the applications for benefits. (T at 10-33).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 2, 2017 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2022. (T at 19).  The ALJ concluded that

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 18.
[3] Two prior administrative hearings were held on June 6, 2019 (T at 34-49) and November 21, 2019, before ALJ Elias Feuer. (T at 76-106).

Plaintiff's degenerative disc disease of the cervical and lumbar spine; varicose veins (status post vein ablation); and asthma were severe impairments as defined under the Act. (T at 19).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 21).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can occasionally climb ramps and stairs, balance, stoop, and kneel; she can never crouch, crawl, or climb ladders, ropes, or scaffolds; she can frequently operate foot controls, push, pull, reach, and handle; she can tolerate occasional exposure to extreme cold and heat, wetness, humidity, and environmental irritants (*i.e.*, fumes, odors, gases & dusts); and she must avoid all use of hazardous machinery and all exposure to unprotected heights. (T at 21).

The ALJ concluded that Plaintiff could perform her past relevant work as a housekeeper and waitress. (T at 24).

In addition, considering Plaintiff's age (45 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ

determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 25-26).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between October 2, 2017 (the alleged onset date) and July 29, 2021 (the date of the ALJ's decision). (T at 26).  On October 31, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-9).

### C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on January 3, 2023. (Docket No. 1).  On April 5, 2023, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 19, 20).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on April 28, 2023. (Docket Nos. 22, 23).  On May 30, 2023, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 26).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two main arguments in support of her request for

reversal of the ALJ's decision.  First, Plaintiff challenges the ALJ's RFC

determination.  Second, Plaintiff argues that the ALJ's assessment of her

mental impairments was not supported by substantial evidence.  This Court will address each argument in turn.

A.    RFC

A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).  When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

As noted above, the ALJ determined that Plaintiff retained the RFC to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can occasionally climb ramps and stairs, balance, stoop, and kneel; she can never crouch, crawl, or climb ladders, ropes, or scaffolds; she can frequently operate foot controls, push, pull, reach, and handle; she can tolerate occasional exposure to extreme cold and heat, wetness, humidity, and environmental irritants (*i.e.*, fumes, odors, gases &

dusts); and she must avoid all use of hazardous machinery and all exposure to unprotected heights. (T at 21).

Plaintiff challenges several aspects of the ALJ's RFC determination.

### 1. Walking/Standing

The ALJ found that Plaintiff could perform light work, which "requires a good deal of walking or standing." *See* SSR 83-10.  A full range of light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.*

Dr. Michael Healy performed a consultative examination in April of 2018 and opined that Plaintiff had "mild to moderate limitation" with respect to standing and walking. (T at 601).  Dr. Dennis Nachmann, a treating physician, reported in October of 2019 that he believed Plaintiff was limited to standing or walking a total of 1 ½ hours in an 8-hour workday, although he said he did not expect the condition to last more than 12 months. (T at 1051-52).

In November of 2019, Dr. Kazmi, a treating neurologist, opined that Plaintiff was limited to standing or walking for a total of 30 minutes in an 8-hour workday. (T at 1057).  Dr. Pollock, a non-examining medical expert, testified in November of 2019 that Plaintiff was limited to standing for one

hour at a time and up to four hours per day and was limited to walking for 30 minutes at a time and up to two hours per day. (T at 89).

The ALJ found Dr. Healy's assessment "largely consistent with the ongoing medical record …." (T at 23).  Courts have sustained decisions finding a claimant capable of light work notwithstanding a medical opinion assessing mild-to-moderate limitation with respect to standing and walking. *See Henderson v. Saul*, 788 F. App'x 86, 87 (2d Cir. 2019); *Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *15 (W.D.N.Y. Feb. 25, 2015)(collecting cases).

In those cases, however, the courts have looked for "additional information to show how [the] limitations would affect Plaintiff's RFC" and have insisted that substantial evidence support the conclusion that the claimant can, in fact, stand or walk up to 6 hours per day. *See, e.g., Cooper v. Saul*, 444 F. Supp. 3d 565, 580 (S.D.N.Y. 2020); *Tamra S. v. Comm'r of Soc. Sec.*, No. 20-CV-01712, 2022 WL 5415596, at *4 (W.D.N.Y. Oct. 7, 2022)("Although a 'moderate' limitation does not necessarily preclude light work, the ALJ must demonstrate that a plaintiff can sit, stand, or walk for at least six hours per day with other substantial evidence").

The Court finds that substantial evidence does not support the conclusion that Plaintiff can stand or walk for up to 6 hours per day.  Two

treating physicians (Dr. Nachmann and Dr. Kazmi) assessed greater limitation in Plaintiff's ability to stand and walk for prolonged periods. (1052, 1057).  Treatment notes documented persistent pain, decreased range of motion, and antalgic gait.  (T at 784, 791, 793, 796, 1531, 1541, 1561, 1574, 1602, 1746, 1795).

In November of 2019, Dr. Pollock, the Commissioner's own medical expert, testified that Plaintiff could only stand for four hours per day (no more than 1 hour at a time) and was limited to walking for two hours per day (no more than 30 minutes at a time). (T at 89).

The ALJ did not address Dr. Pollock's opinion.  The Commissioner argues that this was harmless error because one could read Dr. Pollock's opinion as indicating that Plaintiff could stand and walk for a total of 6 hours in an 8-hour workday (four hours of standing, plus two hours of walking).

This is not the most logical reading of Dr. Pollock's testimony and the Court declines to accept a post-hoc rationalization to excuse the ALJ's failure to discuss Dr. Pollock's findings on this important issue. *See Newbury v. Astrue*, 321 F. Appx 16, 18 (2d Cir. 2009) ("A reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'")(quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Rosa v. Comm'r of Soc. Sec.,* No. 17 Civ 3344, 2018 U.S. Dist. LEXIS

137494, at *44 (S.D.N.Y. Aug. 13, 2018)("Post hoc justifications raised by the Commissioner in her memorandum of law do not cure defects in the ALJ's decision ….").

Although there is some evidence in the record to support the ALJ's assessment, the ALJ's failure to address Dr. Pollock's testimony was a material omission. *See Morgan on Behalf of Morgan v. Chater*, 913 F. Supp. 184, 188–189 (W.D.N.Y.1996)(noting that the court "cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered")(quoting *Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir.1985)).

A remand, therefore, is required for proper consideration of all the evidence regarding Plaintiff's ability to meet the standing and walking demands of light work.

### 2. *Lifting/Carrying*

By finding Plaintiff capable of performing light work, the ALJ implied that she could lift 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. *See* SSR 83-10.  Plaintiff challenges this conclusion.  For the following reasons, the Court finds this aspect of the ALJ's decision supported by substantial evidence.

The ALJ presented a series of interrogatories to Dr. Steven Goldstein, a non-examining medical expert.  In March of 2021, Dr. Goldstein opined that Plaintiff could frequently lift/carry up to 10 pounds and occasionally lift/carry up to 20 pounds. (T at 1841). Although Dr. Goldstein should have been more diligent in citing the evidence he relied on to reach this conclusion, the conclusion is nevertheless supported by a reasonable reading of the record.

Treatment notes over an extended period evidenced that Plaintiff had near-to-full strength in the upper extremities, along with full range of motion of the shoulders, elbows, forearms, and wrists bilaterally. (T at 601, 689, 697, 717, 722, 725, 746, 762, 814, 842, 850, 872, 885, 890, 892, 904, 907, 913, 919, 921, 924, 932, 935, 938, 951, 963, 969, 975, 980, 983, 985, 992, 995, 1004, 1012, 1019, 1024, 1035, 1082, 1090, 1128, 1136, 1139, 1165, 1177, 1207, 1223, 1233, 1288, 1314, 1320, 1329, 1336, 1427, 1454, 1461, 1615, 1631, 1684.).

Dr. Padmaraju, a non-examining State Agency review physician, found that Plaintiff could frequently lift/carry up to 10 pounds and occasionally lift/carry up to 20 pounds. (T at 127).

The Court, therefore, finds this aspect of the ALJ's decision supported by substantial evidence.

### 3. *Respiratory Irritants*

The ALJ concluded that Plaintiff could tolerate occasional exposure to environmental irritants. (T at 21).  Plaintiff challenges this conclusion as contrary to several medical opinions of record.

Dr. Healy (the consultative examiner) opined that Plaintiff should avoid exposure to respiratory irritants. (T at 601).  Dr. Pollock (the medical expert who testified at the November 2019 administrative hearing) testified that Plaintiff should have no concentrated exposure to dust, odors, fumes, or other pulmonary irritants. (T at 101).

Dr. Goldstein (the medical expert who answered interrogatories in March of 2021) concluded that Plaintiff should never be exposed to dust, odors, and pulmonary irritants. (T at 1845).  Dr. Kazmi (the treating physician) assessed moderate restriction in Plaintiff's ability to tolerate exposure to dust, fumes, gases, noxious odors, and poor ventilation. (T at 1058). Dr. Padmaraju (the non-examining State Agency review physician) opined that Plaintiff should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. (T at 127).

The ALJ discounted the uniform conclusion of the treating, examining, and reviewing physicians, and found that Plaintiff could tolerate occasional exposure to environmental irritants. (T at 21). The ALJ

14

explained this aspect of his decision by repeatedly characterizing Plaintiff's asthma as mild and intermittent and noting the absence of "any recent acute attacks." (T at 23-24).

In so doing, the ALJ, a layperson, improperly assumed "the mantle of a medical expert." *See Balotti v. Comm'r of Soc. Sec.*, No. 20-CV-8944 (RWL), 2022 WL 1963657, at *6 (S.D.N.Y. June 6, 2022)(quoting *Amarante v. Comm'r of Soc. Sec.*, No. 16-CV-0717, 2017 WL 4326014 at *10 (S.D.N.Y. Sept. 8, 2017); *see also Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (holding that "the ALJ cannot arbitrarily substitute h[er] own judgment for competent medical opinion") (modifications in original).

The ALJ was obliged to acknowledge and address the significant consistency between multiple medical opinions and offer an adequate explanation for the decision to depart from the shared assessment of the medical professionals.  The ALJ's decision lacks such acknowledgement and explanation.

The Commissioner argues that this error was harmless because none of the jobs identified by the ALJ at step four and step five require exposure to pulmonary irritants.  This argument is at odds with the testimony from a vocational expert at the November 2019 administrative hearing, which was to the effect that a claimant precluded from exposure to respiratory irritants

could *not* perform Plaintiff's past relevant work as a housekeeper or waitress. (T at 101).

A remand is, therefore, required for proper consideration of the evidence regarding Plaintiff's ability to tolerate exposure to respiratory irritants.

### B.   Mental Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co workers and usual work situations." *Gibbs v. Astrue*, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l) (5).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or

impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

The Commissioner uses a "special technique" to evaluate the severity of mental impairments at step two of the sequential analysis. *See* 20 C.F.R. § 404.1520a(a).  The ALJ rates the degree of functional limitation resulting from the claimant's mental impairment(s) to determine whether the impairment(s) is/are "severe." *See id*. at § 404.1520a(d)(1).  To perform this analysis, the ALJ considers the degree of limitation in four (4) broad functional areas – understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  If the limitation in these domains is no more than "mild," and if the evidence does not otherwise indication more than a mild limitation in the claimant's activity to perform basic work activities, then the mental impairment(s) will be considered non-severe. *See id.*

In the present case, the ALJ recognized Plaintiff's depression and anxiety as medically determinable impairments but concluded that they did not cause more than minimal limitation in her ability to perform basic mental work activities. (T at 19).  The ALJ assessed mild impairment in the four functional areas. (T at 20).

The Court finds that the ALJ erred by failing to develop the record regarding Plaintiff's mental impairments.

Dr. Arlene Broska performed a consultative psychiatric evaluation in April of 2018.  She diagnosed adjustment disorder with dysphoria and anxiety. (T at 606).  Dr. Broska opined that Plaintiff had no limitation in understanding, remembering, or applying directions and instructions; in her ability to interact with others; or in her ability to sustain concentration, perform at a consistent pace, and sustain an ordinary routine and regular attendance at work. (T at 606).  She assessed mild limitation with respect to Plaintiff's ability to regulate emotions, control behavior, and maintain well-being. (T at 606).

The ALJ found Dr. Broska's opinion persuasive and referenced generally unremarkable mental status findings documented by the physicians Plaintiff saw for her physical problems. (T at 20).

Dr. Broska's assessment, however, was more than 3 years old at the time of the ALJ's decision and subsequent developments showed a greater level of limitation.

Plaintiff was admitted to the psychiatric emergency room in August of 2020 due to depression and suicidal ideation.  (T at 19).  She began mental health treatment in September of 2020. A mental health counselor stated that Plaintiff had severe impairment in emotional well-being, along with moderate to severe impairment with social relationships and daily routine. (T at 1868). The counselor diagnosed major depressive disorder. (T at 1874).

 Dr. Efobi, a medical expert retained by the Commissioner, reviewed the record and provided interrogatory responses in April of 2021.  He diagnosed adjustment disorder with anxiety and depression. (T at 1857). Dr. Efobi opined that Plaintiff had mild impairment in understanding, remembering, or applying information; interacting with others; and adapting or managing herself, but no limitation as to maintaining concentration, persistence, or pace. (T at 1858).  He believed Plaintiff could do "simple unskilled" or "semi-skilled" work. (T at 1861).

Dr. Efobi, however, twice stated that he needed more psychiatric records to make a determination as to the impact of Plaintiff's mental impairments on her ability to work. (T at 1857-59).

Although Plaintiff began weekly therapy sessions in the fall of 2020, the record contains notes from only three visits in September and October of 2020, with no functional assessment from a treating psychiatric provider. (T at 1865, 1883, 1893).

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted).

This obligation applies even if the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

Moreover, "an ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment." *Gabrielsen v. Colvin,* No. 12-CV-

5694 KMK PED, 2015 WL 4597548, at *4-5 (S.D.N.Y. July 30, 2015)(collecting cases).

"This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2016).

Underpinning the heightening of the ALJ's duty is a recognition that the records and opinions of treating providers are particularly probative in claims involving mental health.  *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."); *see also Marinez v. Comm'r of Soc. Sec.,* 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (noting that treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.") (citing 20 C.F.R. § 416.927(c)(2)).

In the present case, the Commissioner contends that any arguable lack of mental health records should be charged against Plaintiff, whose counsel had an obligation to obtain and provide evidence of impairment and who apparently never asked the ALJ for an extension of time or assistance in obtaining a treating provider opinion and/or additional psychiatric treatment records.

Although some courts have found that an ALJ may rely on claimant's counsel to obtain outstanding records and complete the record the present case is distinguishable from those cases.

For example, in *Jordan v. Comm'r*, 142 F. App'x 542, 543 (2d Cir. 2005), the Second Circuit panel affirmed the denial of benefits even though the ALJ did not contact or obtain records from the treating physician. Notably, ohwever, in addition to holding the record open to allow claimant's counsel to obtain the records, the ALJ in *Jordan* contacted counsel to follow-up on the status of his efforts and counsel responded that the claimant had "nothing further to add to the record." *Id.*

Likewise, in *Frye v. Astrue*, 485 Fed. App'x 484, 488 n.2 (2d Cir. 2012), the panel found the record "fully developed" where the ALJ held the record open "so that counsel could submit additional evidence, *contacted*

*counsel when no further evidence was received*, and, at counsel's request, granted an extension of time to obtain evidence." *Id.* (emphasis added).

In the present case, unlike in *Jordan* and *Frye*, there is no evidence that the ALJ followed up with counsel or otherwise acted to ensure that the record was adequately developed.

In sum, the ALJ did not take any "independent steps" to ensure the record was complete and cannot be said to have satisfied his duty to develop the record. *See, Colucci v. Acting Comm'r of Soc. Sec.*, No. 19-cv-01412 (KAM), 2021 U.S. Dist. LEXIS 62081, at *17 (E.D.N.Y. Mar. 31, 2021)(distinguishing *Jordan* because "there is no evidence that the ALJ sent a reminder to plaintiff's attorney"); *Sotososa v. Colvin*, No. 15-CV-854 (FPG), 2016 U.S. Dist. LEXIS 152800, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016) ("The Second Circuit has indicated that the ALJ may rely on the claimant's counsel to obtain missing evidence under some circumstances, but it has stopped short of holding that the ALJ may delegate his or her duty to the claimant's counsel. In *Jordan* and *Frye*, the Second Circuit determined that the ALJs satisfied their duty to develop the record because, even though the ALJs relied on counsel to obtain missing evidence, they also took independent steps to complete the record."); *see*

*also Carr v. Comm'r of Soc. Sec.*, 16 Civ. 5877 (VSB) (JCF), 2017 U.S. Dist. LEXIS 72209, at *29-33 (S.D.N.Y. May 11, 2017).

### C.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons discussed above this Court finds a remand necessary for reconsideration of the evidence regarding Plaintiff's ability to stand and walk and her capacity for tolerating exposure to environmental irritants.  In addition, further development of the record is necessary to determine the impact of Plaintiff's mental impairments on her ability to meet the mental demands of basic work activity.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the

Pleadings (Docket No. 19) is GRANTED; the Commissioner's Motion for

Judgment on the Pleadings (Docket No. 22) is DENIED; and this case is

REMANDED for further proceedings consistent with this Decision and

Order. The Clerk is directed to enter final judgment in favor of Plaintiff and

then close the file.

Dated: October 10, 2023                         *s/Gary R. Jones*

                                                GARY R. JONES
                                                United States Magistrate Judge